IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | CRIMINAL ACTION |
| | : | |
| v. | : | |
| | : | |
| ANTWAUN EVANS | : | No. 12-616-9 |
| | : | |

**MEMORANDUM**

Pratter, J.                                                                                                                                              January 20, 2016

      David Jay Glassman moves for this Court to recuse itself under 28 U.S.C. § 144 and § 455 and transfer determination of the Defendant's pending Motion to Unseal Transcripts (Doc. No. 622) to another judge.  Mr. Glassman alleges that the Court's conduct during the five hearings on the Government's Motion for an Order to Show Cause, which took place in the spring of 2014, demonstrates sufficient partiality or bias on the part of the Court to necessitate recusal from consideration of all further motions in this case involving Mr. Glassman.  The Court has reviewed Mr. Glassman's motion (Doc. No. 631), the Defendant's Response in Opposition to the Motion (Doc. No. 638), the Government's Response in Opposition to the Motion (Doc. No. 650) and Mr. Glassman's Supplement to his Motion (Doc. No. 652).  For the reasons laid out below, the Court will deny Mr. Glassman's motion.

      **A. Standard for Disqualification**

      Mr. Glassman brings his motion pursuant to both 28 U.S.C. § 455(a) and § 144.  Under § 455(a), "any justice, judge or magistrate judge of the United States shall disqualify [herself] in any proceeding in which [her] impartiality must reasonably be questioned." This is an objective, rather than a subjective standard: "[i]f a reasonable man, were he to know all the circumstances, would harbor doubts about the judge's impartiality under the applicable standard, then the judge

1

must recuse." *In re Kensington Int'l Ltd.*, 368 F.3d 289, 301 (3d Cir. 2004) (citing *Selkridge v. United of Omaha Life Ins. Co.*, 360 F.3d 155, 167 (3d Cir. 2004)); *accord Liteky v. United States*, 510 U.S. 540, 548 (1994) (Claims of bias must be "evaluated on an objective bias, so that what matters is not the reality of bias or prejudice but its appearance."). Generally recusal involves information garnered or biases formed outside of the courtroom. "Opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible." *Selkridge*, 360 F.3d at 167 (citing *Liteky v. United States*, 510 U.S. 540, 555 (1994); *Groeber v. Friedman & Schuman P.C.*, 602 F. App'x 69, 70 (3d Cir. 2015) cert. denied, No. 15-464, 2015 WL 5970027 (U.S. Dec. 14, 2015) ("To warrant reassignment, a case must generally involve apparent bias from an extrajudicial source, above and beyond judicial rulings or opinions formed in presiding over the case.")

Similarly, under § 144, "whenever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding." The affiant has the burden of presenting material facts, stated with particularity, which would convince a reasonable man that a personal, rather than judicial bias exists. *See United States v. Rashid*, 593 F. App'x 132, 134-35 (3d Cir. 2014) cert. denied, 135 S. Ct. 2340 (2015); *United States v. Thompson*, 483 F.2d 527, 528 (3d Cir. 1973). In addition, in order to ensure that recusal requests do not become last-minute devices used by expedient counsel to attempt to avoid outcomes mandated by law, the affiant must file his motion to disqualify at the time he becomes

aware of the circumstances demonstrating the bias. *See Allen v. Parkland Sch. Dist.*, 230 F. App'x 189, 192 (3d Cir. 2007) (upholding denial where affiant waited over six months to file his motion); *Lease v. Fishel*, 712 F. Supp. 2d 359, 374 (M.D. Pa. 2010) aff'd, No. 1:07-CV-0003, 2010 WL 4318833 (M.D. Pa. Oct. 22, 2010).

Under either statute, "a party's displeasure with legal rulings does not form an adequate basis for recusal." *Mina v. Chester Cty.*, No. 14-6261, 2015 WL 6550543, at *6 (E.D. Pa. Oct. 29, 2015) (citing *Securacomm Consulting, Inc. v. Securacom Inc*., 224 F.3d 273, 278 (3d Cir. 2000) (citations omitted)).

**B. Analysis**

Mr. Glassman's central argument is that two *ex parte* communications between Mr. Watson's counsel and the Court took place during the course of the series of hearings on the motion for an order to show cause (Doc. No. 301), and that these communications demonstrate an impermissible bias against Mr. Glassman necessitating the Court's recusal from ruling on the pending motion to unseal the spring 2014 transcripts. Mr. Glassman argues that the Court accepted *ex parte* advocacy from Mr. Watson in the form of an affidavit which included "unfounded, inadmissible allegations about Mr. Glassman and his professional competency," and that he was not served with the affidavit at the time it was sent to chambers and was unable to address or contest the assertions made therein. Glassman Memo at 16. Mr. Glassman also argues that, prior to the June 4, 2014 hearing, the Court invited AUSA Marston, counsel for Mr. Watson, Mr. Watson himself, and counsel for Defendant Mr. Evans into chambers for a conference.[1] Mr. Glassman asserts that he and his counsel were excluded from this conference

---

[1] As is noted in both the responses of the defendant and the Government, Mr. Glassman's list of individuals participating in the June 4, 2014 chambers conference does not match the recollection of either Mr. Cedrone or Ms. Marston. The disputed fact is whether or not Mr. Cedrone was ever present during the conference or whether Mr. Glassman's counsel was present but left. For purposes of deciding the motion, the Court will not engage in fact

3

and that this exclusion demonstrates substantial prejudice on the part of the Court against Mr. Glassman.

Mr. Glassman's arguments regarding the affidavit submitted by Mr. Watson are easily dealt with. The Court expressly stated during the April 23, 2014 hearing that it would not be considering any submission until all the parties had a chance to articulate their respective positions and that, as of the April 23, 2014 hearing, the Court did not believe it necessary to look at the affidavit at all. 4/23/14 Hr. Tr. at 5-6. As was discussed on the record, this affidavit was initially filed under seal due to concerns about privilege, but Mr. Watson's attorney acknowledged at the hearing that it was "appropriate for Mr. Glassman to review [the affidavit]" and that he would be provided with a copy. *Id.* There is no indication that this affidavit was kept from Mr. Glassman or that it was even considered by the Court. Moreover, there were three additional hearings following the April 23, 2014 hearing, during the course of which Mr. Watson testified under oath and Mr. Glassman was given the opportunity to cross examine him. On these facts, Mr. Glassman has provided no basis for a reasonable person to question the Court's impartiality or to infer the existence of prejudice or bias.

As to the June 4, 2014 conference, Mr. Glassman's argument for recusal rests principally on the general impropriety of *ex parte* communications with the Court and the Third Circuit Court of Appeals decision in *In re Kensington Int'l, Ltd.*, 368 F.3d 289 (3d Cir. 2004). In *Kensington*, certain creditors moved for a judge presiding over a series of asbestos related bankruptcies to recuse himself from further proceedings. *Id*. at 293. At the outset of these cases, the presiding judge appointed a number of consulting advisors to "inform the Court of the vast landscape of asbestos related issues that would permit the Court to make reasoned case

---

finding and will take as true Mr. Glassman's characterization that Ms. Flannery was not present at the conference but that Mr. Cedrone was. This fact, however, does not impact the Court's analysis.

management decisions." *Id.* at 303.   These experts all had experience with asbestos or mass tort litigation.  After the judge had engaged in extensive *ex parte* communication with these advisors, the defendants filed a motion for recusal alleging that some of these advisors represented other asbestos personal injury plaintiffs.  The defendants argued—and the Third Circuit Court of Appeals agreed—that the advisors' representation of asbestos plaintiffs created an impermissible appearance of bias.  *Id.* at 306-207.

Notably, however, while the Third Circuit analyzed the significance of the *ex parte* communications, the holding in *Kensington* does not rest on the simple fact that an *ex parte* communication took place. 368 F.3d at 305 ("We do not hold that *ex parte* communications alone-in the absence of any conflict of interest-require recusal.").  Rather, the holding rests on the fact that the consultants had conflicts of interest based upon their representation of potential future asbestos claimants and that this bias could be imputed to the Judge based upon extensive *ex parte* communication with the judge over a twenty-two month period regarding substantive issues to the case.  *Id.* at 308-309.

Here, Mr. Glassman's allegations do not demonstrate similar impartiality or bias necessitating the Court's recusal or disqualification under either § 455(a) or § 144. While *ex parte* communications are certainly not preferable, they are also not inherently impermissible and are tolerated in the context of discussions regarding non-merits issues or to address administrative matters. *See In re Sch. Asbestos Litig.*, 977 F.2d 764, 789 (3d Cir. 1992), as amended (Oct. 8, 1992) (citing *United States v. Thompson*, 827 F.2d 1254, 1258–59 (9th Cir.1987)).  The record indicates that the June 4, 2014 conference dealt with administrative matters solely relevant to the Court's holding that the Government had shown cause to believe Mr. Watson—not Mr. Glassman—had violated the terms of the protective order.  This discussion

with counsel for the Government and Mr. Watson was noted on the record at the start of the hearing and no objection was raised by Mr. Glassman's counsel regarding her participation at that time.  Moreover, immediately following the complained of *ex parte* conference, the Court held that "the government has not been able—has not persuaded the Court that there is sufficient evidence to find any violation by Mr. Glassman."  6/4/14 Hr. Tr. at 6.  While Mr. Glassman speculates as to the nefarious character of the  June 4th chambers conference and references the Court's comments as to Mr. Watson's "candor" as evidence of bias against Mr. Glassman and in his favor and Mr. Watson, the Court nevertheless found that Mr. Watson *and not Mr. Glassman* had violated the protective order. Based upon these facts, the Court cannot conclude that a reasonable person would find the Court's conduct demonstrates any bias against Mr. Glassman whatsoever.

To the extent that Mr. Glassman argues that the appearance of bias stems the Court's statement of its intention to refer Mr. Glassman to the Supreme Court of Pennsylvania Disciplinary Board at the end of the June 4, 2014 hearing, his argument conflates the Court's obligations to the parties and counsel regarding the matter before it, and the Court's obligations as a lawyer under the Pennsylvania Rules of Professional Conduct.   Rule 8.3 of the Pennsylvania Rules of Professional Conduct states that "a lawyer who knows that another lawyer has committed a violation of the Rules of Professional Conduct that raises a substantial question as to that lawyer's honesty, trustworthiness or fitness as a lawyer in other respects, shall inform the appropriate professional authority."  Pa. R. Prof. Cond. 8.3.  Similarity the Code of Conduct for United States Judges, Cannon 3(b)(5) requires that the Court "take appropriate action upon learning of reliable evidence indicating the likelihood that a judge's conduct contravened this Code or a lawyer violated applicable rules of professional conduct."  Contrary to Mr. Glassman's

assertions, neither of these rules mandate that, prior to a referral, the Court need make any findings of fact or that Mr. Glassman is entitled to contest the existence of a violation on the record.  Additionally, this obligation of the Court to refer Mr. Glassman to the Disciplinary Board is independent of the disposition of the motion for an order to show cause.

      Mr. Glassman's argument that Court's referral demonstrates disqualifying bias is based entirely on a misreading of the Tenth Circuit's holding in *Bell v. Chandler*, 569 F.2d 556 (10th Cir. 1978).  In *Bell*, the United States sought a writ of mandamus to disqualify Hon. Stephen Chandler, a U.S. District Court Judge.  The movants alleged that in prior actions, the judge had demonstrated a personal bias against one of the counsel in the case, former U.S. Attorney William Burkett, as well as the United States Government, and should be disqualified under 28 U.S.C. § 144 and § 455.  *Bell,* 569 F.2d at 557.   The conflict grew out of a grand jury investigation of former Oklahoma Governor David Hall and certain deposition testimony related to this investigation.  While the opinion does not elaborate on the specifics of the conflict, the Tenth Circuit Court of Appeal notes that Mr. Burkett and Judge Chandler were engaged in an ongoing legal "tug-of-war" prior to the motion to disqualify and that during a prior action Judge Chandler had summarily disbarred Mr. Burkett and held him in contempt.  *Id.* at 558.  Under these circumstances, the history of conflict between the Judge and the litigant was sufficient to necessitate recusal.  *Id.* at 559.

      Here, Mr. Glassman has made no such showing demonstrating any sort of ongoing antagonistic relationship or actions analogous to Judge Chandler's efforts to disbar Mr. Burkett which would raise the possibility that the Court could not fairly and impartially decide the defendant's motion to unseal transcripts.  While Mr. Glassman argues that the referral is itself evidence of the Court's bias, the Court explained on the record at the June 4th hearing that it was

not making "any recommendation or any kind of statement other than to send to the board [the transcripts from the motion hearings] and to leave to the board any evaluation they want to make." 6/4/14 Hr. Tr. 7.  This alone cannot necessitate recusal.  In essence, to agree with Mr. Glassman's argument, the Court would have to find that any time a judge refers counsel to a disciplinary board, the judge must recuse herself from any future proceedings wherein that attorney appears.  Not only does *Bell* not stand for such a proposition, Mr. Glassman has provided no argument or analysis justifying such a broad and unworkable reading of Rule 8.3.

Mr. Glassman's citation to the Court's comments as to the hypothetical possibility of recovery of attorney's fees by Mr. Evans certainly does not provide any additional evidence to infer the appearance of bias.  Simply noting that an action to recover fees is a possibility fails to objectively demonstrate the Court's fixed predisposition one way or the other as to the defendant's entitlement to recover these fees.   Moreover, even if these remarks could be read as hostile to Mr. Glassman, the Supreme Court in *Liteky* has explained that "judicial remarks during the course of a trial that are critical or disapproving, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge," unless "they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible." 510 U.S. at 555.

Ultimately the Court finds that Mr. Glassman, in his moving papers and affidavit, has failed to raise any issues which would cause a reasonable man to harbor doubts about the Court's impartiality or raise the possibility of prejudice or bias. For this reason, the Court finds that it need not recuse itself from this matter under either 28 U.S.C. § 455 or § 144.

### C. Continuance of Motion to Seal

In the last section of his brief, Mr. Glassman argues that, in the even the Court should deny his motion, the Court should stay the defendant's pending motion to unseal the transcripts

in order to allow Mr. Glassman time to pursue a writ of mandamus to the Third Circuit Court of Appeals.  As we find that Mr. Glassman's motion is entirely without merit, we therefore decline to institute a stay on the underlying proceedings in this matter.

*   *   *

For the reasons outlined, the Court will deny Mr. Glassman's motion.  An appropriate order will be entered reflecting the above.

BY THE COURT:


 /s/ Gene E.K. Pratter
GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE